In re **MIDWEST EMERY FREIGHT SYSTEM, INC., an Ohio Corporation, Debtor.**

**GENERAL DRIVERS, WAREHOUSE-MEN AND HELPERS LOCAL 89, etc. et al., Plaintiffs,**

v.

**MIDWEST EMERY FREIGHT SYSTEM, INC., an Ohio Corporation, Defendant.**

**Bankruptcy Nos. 83 B 0084. Adv. No. 84 A 0153.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 17, 1985.

Lisa Beth Moss, Carmell, Charone & Widmer, Chicago, Ill., for plaintiffs.

Bruce A. Harwood, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This matter comes upon the adversary complaint of certain Teamster Union Locals [1] ("unions") seeking modification of the automatic stay pursuant to Section 362(d) of the Bankruptcy Code and an order directing Midwest Emery Freight System, Inc. ("debtor") to comply with grievance procedures as specified in the various collective bargaining agreements ("labor agreements"). In answer to the complaint, the debtor contends that the union failed to show cause to lift the stay and that the grievance procedures of the labor agreements were rendered ineffective.

## II.

In lieu of an evidentiary hearing, the parties submitted a stipulation of the following facts. On January 3, 1983, the debtor filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Members of the unions filed grievances against the debtor alleging violations of the labor agreements. The labor agreements were to be effective from March 1, 1982, until March 31, 1985. However, the agreement with Local 407 became effective on April 1, 1982, and was to continue in effect until March 31, 1985. The grievances arose both prepetition and postpetition. In general, the grievances against the debtor are for performing union work with nonunion employees, closing a facility without notice, reducing employees' wages based upon their productivity, and terminating union employees while using nonunion employees.

Seven employees of the debtor filed the grievances in issue. As of January 16, 1984, the bar date set for filing proof of claims, five of these seven employees filed proofs of claim. On November 10, 1983, the unions requested that the debtor agree to lift the automatic stay for the purpose of resolving the pending grievances. However, on November 18, 1983, the debtor advised the unions that it would not agree to a lifting of the automatic stay. On January 31, 1984, the unions filed an adversary complaint to modify the automatic stay and to compel the debtor to comply with the grievance procedures as specified

---

**1.** The local chapters of the union represented in this complaint are (1) the General Drivers, Warehousemen and Helpers Local 89, (2) International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Highway Truckdrivers and Helpers Local 107, (3) International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Truckdrivers Union Local 407, (4) International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Merchandise Drivers Local 641.

in the labor agreements. Subsequently, on June 8, 1984, the court, the Honorable Thomas James presiding, rejected the labor agreements upon which the grievance claims and the grievance procedure clauses were based. Apparently, new collective bargaining agreements have not been executed by the parties.

The unions in their complaint argue that the duty to arbitrate survives the termination of a labor agreement with respect to claims that arose under the labor agreement.

In opposition, the debtor claims that the unions have failed to demonstrate any basis for modifying the stay. First, the debtor contends that the rejection of the labor agreement was retroactive. Since the rejection was retroactive, there was no labor agreement when the supposed grievances arose and therefore no corresponding duty to resolve these grievances in accordance with the labor agreement. Second, the debtor argues that even if the duty to arbitrate survives rejection of a collective bargaining agreement, the unions have failed to show cause to lift the stay pursuant to § 362. Thus, the issues before the court are whether the rejection of a collective bargaining agreement is retroactive and whether cause exists to lift the automatic stay.

### III.

The United States Supreme Court in *National Labor Relations Board v. Bildisco and Bildisco, Debtor-in-Possession*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) held that a collective bargaining agreement as an executory contract can be rejected pursuant to Section 365 of the Bankruptcy Code. Furthermore, the Court held that a debtor-in-possession does not commit an unfair labor practice when it

unilaterally modifies or terminates one or more provisions of a collective bargaining agreement prior to a court-approved rejection of the labor agreement. In upholding a debtor's unilateral modification or termination of a labor agreement, the *Bildisco* Court noted that the Bankruptcy Code specifies that the rejection of an executory contract constitutes a breach of contract which relates back to the date immediately preceding the filing of the petition in bankruptcy. 11 U.S.C. § 365(g)(1). The Supreme Court reasoned that the "relation back" effect of § 365(g)(1) dealt not only with the breach of contract claims for purposes of priority of claims, but also for rejection purposes. Consequently, the Court found that the rejection of an executory contract related back to the day before the filing of the petition. Furthermore, the Court noted that claims arising after the filing of the petition, such as from rejection of an executory contract, must be presented through the normal administration process of filing proof of claims which are estimated and classified pursuant to Section 502(g). Thus, the *Bildisco* Court concluded that from the filing of a petition in bankruptcy until formal acceptance of the labor agreement, the labor agreement is not an enforceable contract within the meaning of NLRA § 8(d).[2] 104 S.Ct. at 1199.

■ In the case *sub judice*, the labor agreements were rejected on June 8, 1984. This rejection was retroactive to January 2, 1983, the day preceding the filing of the petition in bankruptcy. For purposes of liquidating these claims based upon labor grievances, the agreements and the labor grievances procedure clauses of the collective bargaining agreements were ineffective as of January 2, 1983. Therefore, claims based upon labor disputes arising

---

**2.** The "Bankruptcy Amendments and Federal Judgeship Act of 1984" (1984 amendments) changed the law in regards to the rejection of collective bargaining agreements. (Pub.L. No. 98–353, Title III, Subtitle J, § 541(a), 98 Stat. 390). Generally, the 1984 amendments became effective on the date of enactment, July 10, 1984. However, the amendments changing the

rejection of collective bargaining agreements did not apply to cases filed under Title 11 of the United States Code which were commenced prior to the date of enactment. In the instant case, the debtor filed its voluntary petition for reorganization on January 3, 1983, prior to the enactment of the 1984 amendments. Therefore, *Bildisco* controls this action.

after January 1, 1983, are not subject to the labor grievance procedure clauses and therefore must be liquidated in this court.

However, labor grievances arising on or prior to January 1, 1983, may be subject to the dispute resolution procedures as specified in the various labor agreements. The duty to resolve labor disputes in accordance with the procedures specified in the labor agreements should survive the rejection of the labor agreements with respect to grievances that arose under the contract. *See Nolde Bros. Inc. v. Bakery Workers*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). *See also International U. of Operating Eng. v. G. Bliudzius Contr.*, 730 F.2d 1093 (7th Cir.1984). Since the rejected labor agreements were effective until the day preceding the filing of the petition, the claims based upon grievances which arose prior to that date should be resolved in accordance with the grievance procedure clauses.

Since the filing of the petition in bankruptcy, the resolution of labor grievances has been stayed by Section 362 of the Bankruptcy Code. However, a valid contract between the parties provided for submission of these grievances to a committee or panel which is familiar with labor disputes. A contractual basis and specialized forum for liquidation of these grievances support a lifting of the automatic stay. *See In Re Sterling Mining Company, Inc.*, 21 B.R. 66, 67–68 (Bankr.W.D.Va. 1982); *See also In Re Lahman Mfg. Co., Inc.*, 31 B.R. 195 (Bankr.S.D.1983). (modification of stay where a specialized tribunal exists). Furthermore, where the assets of the estate are not threatened by the proceeding and the debtor is reorganizing rather than liquidating, the court should not stay the proceedings. *See Matter of Shippers Interstate Service, Inc.*, 618 F.2d 9, 13 (7th Cir.1980). A lifting of the stay as to the grievances which arose as of or prior to January 1, 1983, strikes an equitable balance between the federal labor policy of encouraging industrial self-government[3] and the federal bankruptcy policy of providing a single forum for the liquidation of bankruptcy claims. Therefore, grievances which arose as of or prior to January 1, 1983, should be liquidated in accordance with the labor agreements. Once liquidated, these grievance claims can be administered in these bankruptcy proceedings.

Accordingly, the automatic stay is lifted as to the grievances which arose as of or prior to January 1, 1983.[4] The debtor is directed to liquidate these grievances in accordance with the labor agreements. Counsel for the unions is to prepare a draft order in accordance with this opinion within five (5) days.

---

**3.** Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*

**4.** The stay is lifted as to the following nonexhaustive list of grievances:

| | | | Grievance Date | |
|---|---|---|---|---|
| *1) | R.B. | I&S 170(72) | | 10–31–81 |
| 2) | R.B. | I&S 285(114) | GD | 1–4–82 |
| *3) | F.H. | 5–C171–82 | GD | 3–29–82 |
| *4) | W.N. | 5–C195–82 | GD | 4–15–82 |
| 5) | W.N. | 5–C196–82 | GD | 4–13–82 |
| 6) | W.N. | 5–C197–82 | GD | 4–14–82 |
| 7) | F.H. | 6–C239–82 | GD | 5–3–82 |
| 8) | F.H. | 8–C310–82 | GD | 7–1–82 |
| *9) | E.R. | 495–119 | GD | 7–31–82 |
| 10) | W.N. | 10–C372–82 | GD | 9–7–82 |
| 11) | F.H. | 10–C373–82 | Grievance Date | 9–10–82 |
| 12) | E.R. | I&S 201 | GD | 9–12–82 |
| 13) | W.N. | 10–C377–82 | GD | 9–17–82 |
| 14) | F.H. | 11–C395–82 | GD | 9–27–82 |
| 15) | W.N. | 11–C394–82 | GD | 9–24–82 |
| 16) | W.N. | 11–C393–82 | GD | 9–24–82 |
| 17) | W.N. | 11–C419–82 | GD | 10–4–82 |

| | | |
|---|---|---|
| * | R.B. | Richard Barlow |
| * | F.H. | Francis Hopkins |
| * | W.N. | William Netterville |
| * | E.R. | Eugene Rock |