**In re VALLEY KITCHENS, INC., Debtor.**

**OHIO VALLEY CARPENTERS DISTRICT COUNCIL, LOCAL NO. 415, Plaintiff,**

v.

**VALLEY KITCHENS, INC., Debtor, Defendant.**

Bankruptcy No. 1–85–00278.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 10, 1985.

---

See also, 51 B.R. 113.

David M. Cook, Cincinnati, Ohio, for movant.

Paul A. Nemann, Cohen, Todd, Kite & Stanford, Cincinnati, Ohio, for debtor.

A. Jeffrey Marks, Wood & Lamping, Cincinnati, Ohio, for Creditors Committee.

## DECISION AND ORDER ON MOTION TO LIFT THE STAY

BURTON PERLMAN, Bankruptcy Judge.

At Cincinnati, in said District, on the 10th day of December, 1985.

The debtor, a manufacturer of cabinets, filed a Chapter 11 bankruptcy case on February 1, 1985. Debtor employs cabinetmakers who are members of Local Union No. 415 Industrial, Ohio Valley Carpenters' District Council, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (hereinafter "Union"). On June 23, 1983, debtor entered into a collective bargaining agreement with Union. After debtor filed bankruptcy, it unsuccessfully attempted to reject the collective bargaining agreement. The collective bargaining agreement expired by its own terms in June, 1985.

On September 20, 1985, the Union filed a motion to lift the automatic stay. The motion states that six employees have grievances against the debtor, that these employees have exhausted the grievance procedure and have properly notified the debtor of their intent to arbitrate the grievance, but that the debtor has refused to arbitrate these grievances. The motion further states that no impairment of the debtor's financial position will occur as a result of either the arbitration of these grievances or any remedy an arbitrator may order.

A preliminary hearing was held on the motion on October 30, 1985. At that time, debtor's counsel argued that the employees were not entitled to arbitration of their grievances because they had failed to fol-

**8**

low the procedure set forth in Article XVI of the collective bargaining agreement. Specifically, debtor stated that three grievances were never received by the debtor, as required, and that three grievances were not timely. Debtor further argued that because of the expense of hiring an arbitrator, the bankruptcy court should deny Union's motion to lift the stay, and itself make the initial determination of the procedural question, whether or not the employees had properly triggered arbitration pursuant to the agreement.

It appears from the Union's motion that the subject grievances were "instituted" on January 21, February 11, March 1, March 2 and March 7, 1985. Therefore, they are governed by the collective bargaining agreement which was signed on June 23, 1983. Article XVI of this agreement, which was attached as Exhibit A to the Union's motion, is entitled Grievance Procedure. Step 1 of this Article provides that, within three working days after the event giving rise to the grievance has occurred, the employee must orally discuss the grievance with his supervisor. If the matter is not settled within two working days, the grievance must go on to Step 2. In Step 2, the plant manager must discuss orally the grievance with the chief steward within two working days, but no later than four working days from the date the grievance was denied under Step 1. If it is not settled within two working days after this discussion, the grievance must be reduced to writing, signed and dated, and Step 3 pursued. Step 3 provides:

Within two (2) working days after the denial of the grievance by the plant manager in step 2, the grievance, which has now been reduced to writing, shall be filed with the Company officer or his official representative. The Company, or its official representative, shall arrange for a conference among the Company Representative, the Chief Steward, Shift Steward involved, aggrieved Employee and the Business Manager. The Business Manager may, if he desires, request the presence of a Union Committee member involved. The conference shall be held within five (5) working days after the written grievance has been filed with the Company officer and it shall be held during the hours specified in this Agreement. The Company shall render a written decision within two (2) working days after the above conference meeting. In the event Step 3 fails to satisfactorily settle the grievance, the Union may submit the grievance to Arbitration by serving written notice of its intention to arbitrate on the Employer within ten (10) days from the date of the Company's decision in Step 3.

The Union contends in its motion that the employees complied with the procedures in Step 3. The debtor states that the employees did not.

Article XVII, entitled Arbitration, states in Section 1:

In the event the Union submits a grievance or dispute involving the interpretation of application or the terms of the Agreement to Arbitration, it shall be submitted to the Federal Mediation and Conciliation Service, requesting a panel of Arbitrators.

This Article further provides that the decisions of the arbitrators shall be final and binding upon the employee and the parties to the collective bargaining agreement, and also that:

*Section 3.* The fees and expenses of the Arbitrator shall be borne equally by the parties hereto.

*Section 4.* The Arbitrator shall have the jurisdiction only to determine questions concerning the interpretation, application or alleged violations of the Agreement and shall have no authority to add to, subtract from, change, alter or modify the terms of this Agreement.

█ The automatic stay provisions of § 362(a) do stay labor arbitration proceedings. *See, In re Penn Fruit Company, Inc.,* 1 B.R. 714 (Bankr.E.D.Penn.1979); *Matter of R.S. Pinellas Motel Partnership,* 2 B.R. 113 (Bankr.M.D.Fla.1979); H.Rep. No. 95–595, 95th Cong. 1st Sess.

(1977) 340–2; S.Rep. No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787.

The statute applicable on this motion is § 362(d), which reads:

§ 362. Automatic Stay

\* \* \* \* \* \*

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

\* \* \* \* \* \*

 Permitting a matter to proceed before another tribunal may constitute the "cause" for relief from stay provided for in § 362(d)(1) and the decision to grant relief for that reason is clearly within the discretion of the bankruptcy court. *See, In re Midwest Emery Freight System, Inc.*, 48 B.R. 566 (Bankr.N.D.Ill.1985); *In re Sterling Mining Company*, 21 B.R. 66 (Bankr. Va.1982). More specifically, the decision to compel or deny arbitration is discretionary with the bankruptcy judge. *In re F. & T. Contractors, Inc.*, 649 F.2d 1229 (6th Cir. 1981).

We come, then, to the question at hand. We must decide whether, in the circumstances of this case, there is cause to lift the stay so that a resolution of the grievances may be reached before an arbitrator. The question is not without difficulty because it brings into conflict considerations of bankruptcy law on the one hand and well-established labor law policies on the other. We set aside the question of whether the substantive issues raised by the grievances should be determined by an arbitrator, for debtor concedes in its memorandum that, as urged by the Union, they should be. We, therefore, refine the initial question as to whether, in the circumstances of this case, this court should decide procedural issues and find cause to lift the stay only if the outcome is favorable to the Union. We answer the question in the affirmative.

It is true, as observed by the Supreme Court at page 525, 104 S.Ct. at page 1196 in *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), that at the interface between labor and bankruptcy law, the "rights of workers under collective bargaining agreements are important." In that case, the Court held that in recognition of the requirements of the NLRB, rejection of a collective bargaining agreement ought not to be permitted in the absence of efforts by management to negotiate a voluntary modification with the union. At the same time, the Court said that attention must be paid to bankruptcy law considerations. Such considerations include "... the policy of Chapter 11 ... to permit successful rehabilitation of debtors." *Id.* at 527, 104 S.Ct. at 1197. At page 528, 104 S.Ct. at page 1197, the Court observed:

The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs, and possible misuse of economic resources.

While in *Bildisco* the Supreme Court was dealing specifically with the question of the proper conditions for rejection of collective bargaining agreements, the insights afforded by the case are useful in the present situation where we are concerned, not with a question of rejection of contract, but of apportioning the task of adjudicating controversies under a collective bargaining agreement in a bankruptcy law context.

 As in *Bildisco*, we are obliged to balance the equities in reaching a conclusion, taking into account both the rights of workers and the goals of a Chapter 11 bankruptcy case. In our view, it would improperly burden the bankruptcy estate in this case to impose upon it the cost of arbitration unnecessarily. We relate this conclusion specifically to the circumstances of this case. We are aware that the financial capability of this debtor to fund administrative expenses is limited. The fees for services of an arbitrator would not be

negligible item for this debtor. Since debtor raises only the preliminary question of compliance with contractual procedural requirements, and excludes adjudication of the substance of the grievances here in question, we observe that a determination on this preliminary matter in debtor's favor will obviate the need for any of the expense of submission to arbitration. On the other hand, if compliance with contractual procedural requirements is shown, the worker then has the bargained for right to submission of his grievance to an arbitrator. We perceive no prejudice to workers by this course while such procedure might benefit the bankruptcy estate, and consequently hold that at this time, cause to lift the stay has not been shown.

The Union argues that the bankruptcy court has no discretion to hear the issues of "procedural arbitrability", thereby separating them from the possible decision by an arbitrator on the substantive issues. It contends that once it is determined that an arbitration clause applies to a particular dispute and that the substantive issues are to be decided by an arbitrator, issues concerning whether proper procedure for invoking arbitration were followed should also be determined by an arbitrator, not the court. In support of this position, Union cites *John Wiley and Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), as well as its numerous progeny. The Union contends that such cases require this court to allow both the procedural issues and the substantive issues of the grievances to proceed to arbitration. The foregoing cases are, however, distinguishable for they did not involve companies in bankruptcy. When a company files bankruptcy, an added dimension appears that has to do with the rights of other creditors of debtor and the public interest in debtor's rehabilitation. These considerations do not enter into the cases upon which the Union relies, and lead us to a different result here.

In view of the foregoing discussion, we deny Union's motion to lift the automatic stay pending a final hearing on the motion. The clerk will now set the motion for final hearing to determine whether the employees asserting grievances complied with the contractual procedures for invoking arbitration.

So ordered.