In re VALLEY KITCHENS, INC., Debtor.

OHIO VALLEY CARPENTER'S DISTRICT COUNCIL, LOCAL NO. 415, Applicant,

v.

VALLEY KITCHENS, INC., Debtor.

Bankruptcy No. 1–85–00278.

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 11, 1986.

---

David M. Cook, Kircher & Phalen, Cincinnati, Ohio, for applicant.

Paul A. Nemann, Cohen, Todd, Kite & Stanford, Cincinnati, Ohio, for debtor.

### DECISION AND ORDER RE RIGHT TO ARBITRATE

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, a hearing was held pursuant to our Decision and Order entered December 10, 1985. 58 B.R. 6. That Decision and Order dealt with Union's Application to Lift Stay to permit it to arbitrate six grievances specified in the Application. In our aforementioned Decision and Order, we denied Union's application to lift the stay pending a final hearing to determine whether the employees asserting grievances had complied with the contractual procedures set forth in the collective bargaining agreement for invoking ar-

bitration. This was the agenda for the present hearing. The original Application set forth grievances as to six employees. In the Joint Pretrial Statement filed by the parties in advance of the hearing, the parties stipulated that Union's application for relief was withdrawn as to Sandra Christman, Jackie Lanier and Billie Lykins. At the hearing itself, the parties orally stipulated that the application for relief was withdrawn also as to employee Randy Deboard. The grievances of two individuals remain the subject of the present proceeding, Ernie Rice and Rita Porter. The parties further stipulated that with respect to the two remaining grievants, steps 1 and 2 of the grievance procedure were complied with.

There was in effect at the time of the occurrences which are the subjects of grievance, a collective bargaining agreement containing the following:

### ARTICLE XVI

### GRIEVANCE PROCEDURE

*Section 1.* A grievance is defined as a dispute an Employee or the Union may have with the Company relating to the interpretation, application or violation of the express terms of this Agreement. Should the Union or the Employee have a grievance, an earnest effort shall be made to adjust such grievance promptly and in the following manner:

*Step 1.* The Aggrieved Employee, or the Chief Steward, or Shift Steward involved, if the grievance is to be filed on behalf of the Union, shall within three (3) working days after the event has occurred giving rise to the grievance, orally discuss the grievance with the Employee's immediate Supervisor. If the matter is not settled within two (2) working days after the discussion, the grievance may orally be presented to the Plant Manager under Step 2.

*Step 2.* The Chief Steward shall orally discuss the grievance with the Plant Manager within two (2) working days, if possible, but in no event later

than four (4) working days from the date the grievance was denied under Step 1. If the matter is not satisfactorily resolved within two (2) working days after said discussion the grievance shall be reduced in (sic) writing, signed and dated, and referred to Step 3.

Step 3. Within two (2) working days after the denial of the grievance by the plant manager in Step 2, the grievance, which has now been reduced to writing, shall be filed with the Company officer or his official representative. The Company, or its official representative, shall arrange for a conference among the Company Representative, the Chief Steward, Shift Steward involved, aggrieved Employee and the Business Manager. The Business Manager may, if he desires, request the presence of the Union Committee member involved. The conference shall be held within five (5) working days after the written grievance has been filed with the Company officer and it shall be held during the hours specified in this Agreement. The Company shall render a written decision within two (2) working days after the above conference meeting. In the event Step 3 fails to satisfactorily settle the grievance, the Union may submit the grievance to Arbitration by serving written notice of its intention to arbitrate on the Employer within ten (10) days from the date of the Company's decision in Step 3.

Section 2. All grievances, answers and notices, when required to be in writing shall be prepared in duplicate, one for the Employer and one for the Union. Either party to this Agreement shall be permitted to call Employee witnesses at each and every step of the Grievance Procedure.

Section 3. Any Grievance or answer, which has not been presented under the Grievance Procedure within the time period for the presentation or answer or grievance which is not appealed to the next Step of the specified herein, shall be considered as settled, unless one of the parties is not present on the Company's premises. This provision shall apply to the grievances by Employees and the Union and to the Employer's answers to grievances.

Section 4. In reducing a grievance to writing, the following information shall be stated with reasonable clearness:

The exact nature of the Grievance, the act or acts complained of and when they occurred, the identity of the Employee or Employees who claim to be aggrieved, the provisions, if any, of this Agreement that the Employee claims the Employer has violated, and remedy they seek.

Section 5. All time limits specified in this Article XV exclude Saturdays, Sundays, observed Holidays and scheduled days off for the parties involved. Any of these time limits may be extended for a reasonable and specified time by request of either party to the other party, prior to the expiration of the time limit.

As we have already said, the parties stipulated that Steps 1 and 2 of the grievance procedure were complied with. That is, there was an oral discussion of the grievance between the employee or a steward with the employee's immediate supervisor, within three (3) working days after the occurrence grieved. In addition, timely oral discussion of the grievance was held between the chief steward and the plant manager. These steps did not resolve the grievances. The evidence established that each of the grievances was reduced to writing, signed and dated, and was filed with the appropriate company officer. The issue here is whether these respective filings were timely.

In respect to Ernie Rice, the writing prepared pursuant to Step 2 of the grievance procedure states that the date that the grievance occurred was February 28, 1985. The writing is dated March 1, 1985. (The writing indicates that Rice was classified as a maintenance worker and that the nature of his grievance was that he was unjustifiably discharged.) There are spaces at the

bottom of the page to record "Foreman's Answer" and "Plant Manager's Answer". In Rice's case, neither of these portions of the form is filled out.

The grievance of Rita Porter was also the subject of a writing which states that the grievance occurred on March 1, 1985. The writing is dated March 1, 1985. The writing indicates that the nature of the grievance is unjust discharge. In the case of this grievance, the portion of the sheet at the bottom of the page bears the response of the plant manager to the grievance. In this instance, he states that the discharge was justifiable for habitual absenteeism. The date, March 1, 1985, appears here as well.

By a separate writing dated March 5, 1985 in respect to the Rice grievance, Porter, on behalf of the employer, responded that the company believed that the discharge was for just cause.

In accordance with the Step 3 provision of the grievance procedure section of the collective bargaining agreement, we note that if a grievance is not satisfactorily settled in accordance with the preceding portions of Step 3, which call for the company finally to render a written decision after a conference, the Union may have the grievance submitted to arbitration by serving a written notice of an intention to arbitrate within ten (10) days from the date of the company's decision, i.e., in writing, in accordance with Step 3. We see that with respect to Porter, the employer's Step 3 response is dated March 1, 1985. In regard to Rice, the employer's Step 3 response is dated March 5, 1985. The Union, then, in conformity with the last sentence of Step 3, served a written notice of its intention to arbitrate by means of a letter which was dated March 12, 1985. The letter, however, was received by the employer in an envelope bearing a postmark including the date March 20, 1985. Attached to the letter were three forms headed "Federal Mediation and Conciliation Service—Request for Arbitration Panel". The information on each of the three forms was written in. That for Porter was dated March 16, 1985, while that for Rice was dated March 12, 1985.

■ We find as a fact, based upon this evidence, particularly the postmark date, that the Union failed to comply with Step 3 of the grievance procedure regarding invoking arbitration. This was not done "within ten (10) days from the date of the Company's decision in Step 3."

It is the contention of the Union that even if the notice to the employer regarding arbitration was late, and thereby the collective bargaining agreement was not complied with, that there was a custom and practice of not abiding by the time limitations of the contract grievance procedure, and that the custom and practice was acquiesced in by both employer and Union. In support of this proposition, the Union relies upon the testimony of its representative that this debtor had never refused any matter regarding grievance on the grounds that the time limit had not been met. Ralph Kinsworthy, on behalf of the debtor, to the contrary, testified that the time periods regarding grievances have always been abided by during his time of ownership.

■ We find it unnecessary to resolve this conflict in the testimony. It is a well-established proposition in the law that "... an express written contract ... cannot be varied by evidence of usage or custom which either expressly or by necessary implication contradicts the terms of such contract ...". 21 Am.Jur.2d, § 25 at p. 747. Here, the parties bargained for the detailed and very specific grievance procedure. To have the advantage of the grievance procedure contained in the contract, the Union had to comply with that procedure. It cannot avoid the contract grievance procedure by a claim that there was a custom to ignore that procedure.

Accordingly, we have reached the conclusion that the Union, not having complied with the steps of the collective bargaining agreement necessary to demand arbitration of the Rice and Porter claims, may not proceed to arbitration, and its application to

lift the automatic stay to permit it to do so, will be denied.

So Ordered.